UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCIA FLORES, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:14-CV-2412-G |
| ACT EVENT SERVICES, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the defendants' motions to dismiss under Federal Rule of

Civil Procedure 12(b)(6) (docket entries 13, 15).  For the reasons stated below, the

motions are granted with respect to the putative collective action and all named

plaintiffs, except for Rosa Hernandez.  With respect to Hernandez, the motions are

denied.  On its own motion, the court grants leave to amend the entire complaint no

later than **November 10, 2014**.

### 1.  BACKGROUND

#### A.  Factual Background

The plaintiffs accuse the defendants, ACT Event Services, Inc. ("ACT"),

Roman Luis Gaona, and Final & Touch Cleaning Services ("Final Touch"), of

violating the Fair Labor Standards Act (FLSA).  First Amended Collective Action

Complaint ("Complaint") ¶¶ 1, 7, 9 (docket entry 11).  ACT advertises itself as a

"multi-dimensional event and rental production company."  *Id.* ¶ 21.  According to

the plaintiffs, Gaona owns and operates Final Touch solely to provide workers for

ACT.[1]  *Id.* ¶¶ 9, 22, 23.  The named plaintiffs are among those individuals referred to

ACT by Final Touch.  *Id.* ¶ 27.

The plaintiffs believe their interactions with both ACT and Final Touch

establish an employer-employee relationship as defined in 29 U.S.C. § 203(d).  See

*id.* ¶¶ 28-34.  To support this characterization, the plaintiffs highlight the defendants'

"substantial control over the actions of Named Plaintiffs and Collective Plaintiffs."

*Id.* ¶ 29.  The defendants told the plaintiffs the "specific hours during which they

would be expected to perform their work," "set the pay amount" the plaintiffs would

receive, and "maintained employment records" of the plaintiffs.  *Id.* ¶¶ 29-31.

During the last three years of this relationship, the plaintiffs allege, the

defendants violated the FLSA by failing to pay compensable travel time, abide by

federal minimum wage laws, and provide overtime compensation.  *Id.* ¶¶ 45-49, 50-

58, 59-63.  In addition to presenting their own FLSA claims, the named plaintiffs

---

[1]     This opinion will often refer to the business relationship between ACT
and Final Touch.  Because Gaona owns Final Touch, Complaint ¶ 9, the court finds it
unnecessary to refer specifically to Gaona when discussing this business relationship.

"bring this action as a collective action for and on behalf of . . . those employees similarly situated pursuant to the 'opt-in' provisions of the FLSA. . . ." *Id.* ¶ 19.

B. <u>Procedural Background</u>

The plaintiffs filed an initial complaint on July 3, 2014. Collective Action Complaint (docket entry 1). After receiving service, both defendants responded by filing motions to dismiss pursuant to Rule 12(b)(6). ACT Event Services, Inc.'s Motion to Dismiss (docket entry 6); Defendant Roman Gaona's Motion to Dismiss (docket entry 9). The defendants argued that the complaint lacked sufficient factual allegations to establish three essential elements of an FLSA claim: (1) that the defendants qualified as the plaintiffs' employers; (2) that the defendants were FLSA covered employers; and (3) that the defendants actually violated the FLSA. ACT Event Services, Inc.'s Brief in Support of its Motion to Dismiss at 2-4 (docket entry 7); Defendant Roman Gaona's Brief in Support of Motion to Dismiss Plaintiffs' Collective Action Complaint at 3-6 (docket entry 10).

The plaintiffs filed their First Amended Collective Action Complaint on August 12, 2014, rendering the above motions moot. *See* Order Denying Motions to Dismiss (docket entry 12). Still believing that the plaintiffs had failed to assert a claim for relief, the defendants filed new motions to dismiss. ACT Event Services, Inc.'s Motion to Dismiss Plaintiffs' First Amended Collective Action Complaint (docket entry 13); Roman Gaona's Motion to Dismiss Plaintiffs' First Amended

Collective Action Complaint (docket entry 15).  In the briefs supporting these

motions, the defendants reduce their argument to a single contention:  that the

amended complaint has not alleged any violation of the FLSA.[2]  ACT Event Services,

Inc.'s Brief in Support of its Motion to Dismiss ("ACT's Brief in Support") at 2-3

(docket entry 14); Roman Gaona's Brief in Support of its Motion to Dismiss

("Gaona's Brief in Support") at 2-3 (docket entry 16).  They noted that the specific

factual details in the complaint pertained only to an unnamed plaintiff -- Rosa

Hernandez.  ACT's Brief in Support at 3; Gaona's Brief in Support at 3.  This led the

plaintiffs to add Hernandez as a named plaintiff through a notice of consent.  First

Notice of Filing Consents to Join Collective Action (docket entry 17).

The plaintiffs believe that this addition cured the complaint's deficiencies.

Brief in Support of Response to Roman Gaona's Motion to Dismiss ¶ 6 (docket entry

19); Brief in Support of Response to ACT Event Services' Motion to Dismiss ¶ 6

(docket entry 21) (collectively "Briefs in Support of Response").  However, in their

reply brief, the defendants still aver that the allegations fail to state a claim for relief.

*See* Defendants' Joint Reply to Plaintiffs' Responses to Defendants' Motions to

---

[2]     In actuality, this single contention is but a condensed version of the
three grounds raised in the initial motions to dismiss.  Any FLSA claim requires proof
that the defendant is a covered employer who violated the FLSA (*i.e.*, the separate
grounds raised in the initial motions are distinct elements necessary to assert an FLSA
claim).

Dismiss ("Defendants' Reply") (docket entry 22).  The court now turns to the

disposition of these motions.

## II.  ANALYSIS

### A.  Applicable Law

#### 1.  *General Motion to Dismiss Standard*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182

(2008.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

(citations, quotation marks, and brackets omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  *In re Katrina*

*Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks

omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light

most favorable to the plaintiff."  *Id.*  (quoting *Martin K. Eby Construction Company, Inc.*

*v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (*quoting* FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id.* at 680, 683.

2. *Motion to Dismiss Standard Applied to FLSA Collective Actions*

When considering Rule 12(b)(6) motions in FLSA cases, courts should "distinguish between individual . . . claims and those brought on behalf of a putative class." *Creech v. Holiday CVS, LLC*, Civil Action No. 11-46-BAJ-DLD, 2012 U.S. Dist. LEXIS 144838, at *7 (M.D. La. Sept. 28, 2012) (citing *Mell v. GNC Corporation*, Civil Action No. 10-945, 2010 WL 4668966, at *6 (W.D. Pa. Nov. 9, 2010)). While "[t]here is no specific guidance from the Fifth Circuit Court of Appeals" in regards to how collective action claims are treated differently, *id.* at *6, two divergent approaches have arisen throughout the federal system.

Under the first approach, "the plaintiffs need not plead facts to support the propriety of a collective action to survive a Rule 12(b)(6) motion. Whether proceeding collectively is appropriate will be addressed when the plaintiffs move for conditional certification and issuance of notice to the class." *Hoffman v. Cemex, Inc.*, Civil Action No. H-09-3144, 2009 WL 4825224, at *4 (S.D. Tex. Dec. 8, 2009); see also *Long v. CPI Security Systems, Inc.*, No. 3:12-CV-396-RJC-DSC, 2012 WL 3777417, at *5 (W.D. N.C. Aug. 30, 2012) ("Defendant's argument that this Court should dismiss Plaintiff's 'collective action allegation' is inappropriate" at the motion to dismiss stage) (internal citation omitted); *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 435 (E.D. La. 2010) ("The Court finds that defendants' motion to dismiss is

premature because plaintiffs have not moved for certification and had no opportunity to develop a record.").

Other courts note that "[a] motion to dismiss collective action elements of an FLSA action and a motion for conditional certification are different for several reasons. . . ." *Dyer v. Lara's Trucks, Inc.*, Civil Action No. 1:12-CV-1785-TWT, 2013 WL 609307, at *3 (N.D. Ga. Feb. 19, 2013).  Therefore, these courts require plaintiffs to "give the defendant fair notice of the putative class" to withstand a Rule 12(b)(6) motion.  *Id.* at *3; see also *Creech*, 2012 U.S. Dist. LEXIS 144838, at *7 (dismissing collective action because the complaint "fails to provide any such description or details about the other proposed parties who are alleged to be 'similarly situated'"); *St. Croix v. Genentech, Inc.*, No. 8:12-CV-891-T-33EAJ, 2012 WL 2376668, at *3 (M.D. Fla. June 22, 2012) (dismissing collective action because it "merely seeks relief on behalf of 'numerous individuals who were similarly situated'"); *Pickering v. Lorillard Tobacco Company, Inc.*, No. 2:10-CV-633-WKW[WO], 2011 WL 111730, at *2 (M.D. Ala. Jan 13, 2011) (dismissing collective action where "there [was] no description of the job duties (or even the job titles) of the proposed similarly situated employees in the Complaint").  Whereas a motion to dismiss requires only giving "the defendant fair notice of the putative class," receiving conditional certification requires plaintiffs to "produce evidence which allows the Court to

conclude that a reasonable basis exists for finding that there are other similarly situated employees who wish to opt-in to the action." *Dyer*, 2013 WL 609307, at *3.

The court agrees with this latter approach. The Federal Rules of Civil Procedure apply in all civil actions pending before federal courts. Absent an act of Congress directing it to do otherwise, the court will consider Rule 12(b)(6) motions directed at FLSA collective action claims. When analyzing such motions in the collective action context, however, the court must use "judicial experience and common sense." See *Iqbal*, 556 U.S. at 679. Prior to certification, collective actions concern individuals who are not presently before the court and may not have communicated with the named plaintiffs' attorneys. Recognizing this, courts that apply Rule 12(b)(6) motions to collective action claims simply require plaintiffs to "give the defendant fair notice of the putative class." *Dyer*, 2013 WL 609307, at *3. This arguably more liberal Rule 12(b)(6) standard allows both the rule and the certification process to play their proper role in the management of collective actions.

### 3. *Relevant Elements of a Fair Labor Standards Act Claim*

#### a. Employment Relationship

Congress passed the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, in 1938 to combat "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. . . ." 29 U.S.C. § 202. The act applies broadly to employers, defined as "any person

acting directly or indirectly in the interest of an employer in relation to an employee.

. . .”  29 U.S.C. § 203(d).  “[A]ny individual employed by an employer” qualifies as

an employee, 29 U.S.C. § 203(e)(1), and the term employ “includes to suffer or

permit to work.”  29 U.S.C. § 203(g).

      With the circularity of these definitions producing greater confusion than

clarity, the Supreme Court has provided guidance.  The Court concluded that

“economic reality” determines whether an employment relationship exists. *Goldberg v.*

*Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).  In implementing this

“economic reality” test, courts consider whether the putative employer “(1) possessed

the power to hire and fire the employees, (2) supervised and controlled employee

work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records.”  *Gray v. Powers*, 673 F.3d 352,

355 (5th Cir. 2012) (quoting *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir.

2010)).

      b.  Individual and Enterprise Commerce Requirements

      The FLSA’s definition of commerce assists in defining the act’s scope.

Commerce includes “trade, commerce, transportation, transmission, or

communication among the several States or between any State and any place outside

thereof.”  29 U.S.C. § 203(b).  The FLSA’s minimum wage and maximum hours

requirements only apply to an employee “who in any workweek is engaged in

commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . ..” 29 U.S.C. §§ 206-207.  This text indicates that the FLSA can apply through either individual employee or enterprise coverage.

An employee qualifies for individual coverage if (s)he has either “engaged in commerce *or* in the production of goods for commerce.” *Id.* (emphasis added).  The Fifth Circuit has concluded that being “engaged in commerce” requires work that is “so directly and vitally related to the functioning o[f] an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it rather than an isolated activity.”  *Williams*, 595 F.3d at 621 (quoting *Sobrinio v. Medical Center Visitor’s Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)).  Employees are engaged “in the production of goods for commerce” if they are involved with any “incidental operation preparatory to putting goods into the stream of commerce.”  *Western Union Telegraph Company v. Lenroot*, 323 U.S. 490, 503 (1945); *see also* LABOR AND EMPLOYMENT LAW, Ch. 177, § 177.03 (Matthew Bender 2014).

As for enterprise coverage, the existence of an enterprise serves as the threshold requirement.  An enterprise requires the presence of three elements:  “(1) related activities; (2) unified operation or common control; and (3) a common business purpose.”  *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977) (citing *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 518 (1973)); *see also* 29 U.S.C. § 203(r).  With

- 11 -

respect to the first of these elements, "[A]ctivities are 'related' when they are the same or similar . . .." *Brennan*, 410 U.S. at 518 (quoting S. REP. NO. 145-87, at 41 (1961)). If related activities are present, the court then determines whether there exists either a "unified operation or common control." 29 U.S.C. § 203(r). "Unified operation" combines, unites, and organizes "related activities" in a way that creates a "single business unit or an organized business system . . .." 29 C.F.R. § 779.217; *see also* LABOR AND EMPLOYMENT LAW, Ch. 177, § 177.04. Absent a "unified operation," the "related activities" must be under "common control," meaning the "described activities [must be] controlled by one person or by a number of persons, corporations, or other organizational units acting together." 29 C.F.R. § 779.221. Finally, a "common business purpose" is present when activities "are directed to the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213.

If a business qualifies as an enterprise, it must still satisfy both a dollar volume test and commerce standard to fall within the FLSA's enterprise coverage. See LABOR AND EMPLOYMENT LAW, Ch. 177, § 177.04. The enterprise's "annual gross volume of sales made or business done [must not be] less than $500,000 . . .." 29 U.S.C. § 203(s)(1)(A)(ii). Assuming that the enterprise passes the dollar volume test, it must then satisfy a commerce standard similar to that used for individual employees. An enterprise must have "employees engaged in commerce or in the production of goods

- 12 -

for commerce, or [have] employees handling, selling, or otherwise working on goods

or materials that have been moved in or produced for commerce by any person." 29

U.S.C. § 203(s)(1)(A)(i). The inclusion of the second clause (*i.e.*, "employees

handling, selling, or otherwise working on goods or materials that have been moved in

or produced for commerce by any person") was "designed to regulate enterprises

dealing in articles acquired intrastate after travel in interstate commerce." LABOR AND

EMPLOYMENT LAW, Ch. 177, § 177.04 (citing *Schultz v. Kip's Big Boy, Inc.*, 431 F.2d

530 (5th Cir. 1970)). An enterprise satisfies the commerce test "if during the annual

period which it uses in calculating its annual sales . . ., it regularly and recurrently has

*at least two or more employees* engaged in" the above mentioned activities. 29 C.F.R.

§ 779.238 (emphasis added).

### c. Employee Rights Under the FLSA

This case concerns three specific employee rights under the FLSA and related

regulations. First, 29 U.S.C. § 206 requires employers to pay covered employees a

minimum rate of $7.25 per hour. Second, employers must compensate covered

employees for "time spent by an employee in travel as part of his principal activity.

. . ." 29 C.F.R. § 785.38. The term "principal activity" includes activities "performed

as part of the regular work of the employees in the ordinary course of business. . . .

[the] work is necessary to the business and is performed by the employees, primarily

for the benefit of the employer. . . ." *Vega v. Gasper*, 36 F.3d 417, 424 (5th Cir.

1994) (alteration in original) (quoting *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 401

(5th Cir. 1976)).  While home-to-work travel is not compensable, *see* 29 U.S.C.

§ 254, if "an employee is required to report at a meeting place to receive instructions

or to perform other work there, or to pick up and to carry tools, the travel from the

designated place to the work place is part of the day's work" and is therefore

compensable.  29 C.F.R. § 785.38.  Third, 29 U.S.C. § 207 requires employees to

receive "a rate not less than one and one-half times the regular rate at which he is

employed" for hours worked in excess of forty a week.

The FLSA creates both a private cause of action and collective action to

remedy violations:  "An action to recover the liability . . . may be maintained against

any employer (including a public agency) in any Federal or State court of competent

jurisdiction by any one or more employees for and in behalf of himself or themselves

and other employees similarly situated."  29 U.S.C. § 216(b).  If a plaintiff pleads a

collective action, the court conducts a two-step certification inquiry to determine if

enough "similarly situated" plaintiffs exist for the putative class.  *Mooney v. Aramco*

*Services Company*, 54 F.3d 1207, 1213 (5th Cir. 1995), overruled on other grounds by

*Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91(2003).

B.  Application of Law to the Present Dispute

The court divides its analysis into four sections.  The first section discusses

general points applicable to all of the plaintiffs' claims.  The remaining three sections

analyze separately the claims of Rosa Hernandez, the other named plaintiffs, and the putative collective action plaintiffs.

1. *General Points Applicable to All Claims*

The complaint contains sufficient factual allegations to show that the plaintiffs and defendants were engaged in an employment relationship.  The plaintiffs present various factual allegations pertinent to the "economic reality" test:  ACT maintains the plaintiffs' time records; Gaona, in his capacity as owner of Final Touch, "writes checks to the" plaintiffs; ACT and Final Touch "specifically set the pay amount" that the plaintiffs receive; defendants informed plaintiffs "specific hours during which they would be expected to perform their work, and they were instructed exactly how the work must be completed"; defendants transported plaintiffs to event sites; and defendants "had the power to hire and fire" the plaintiffs."  Complaint ¶¶ 25, 26, 29, 31, 32.  These factual allegations satisfy all of the factors considered in the "economic reality test."  See *Gray*, 673 F.3d at 355 (quoting *Williams*, 595 F.3d at 620).

The plaintiffs' factual allegations also indicate that ACT and Final Touch engaged in a single "enterprise."  According to the complaint, Final Touch's "sole purpose" is satisfying ACT's demands regarding "how many people to supply for services" at specific events.  Complaint ¶¶ 23, 24.  In other words, ACT possesses common control over the related activities of recruiting workers and providing them with employment.  These activities advance the business purpose of ensuring ACT

can satisfy its contracts.  See *id.*  Therefore, the relationship between ACT and Final Touch qualifies as an enterprise.  *See* 29 U.S.C. § 203(r).

At the motion to dismiss stage, this enterprise satisfies the volume test and commerce standard.  The plaintiffs allege that "Defendants have been an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1) and have employed employees that are engaged in commerce, handling goods that had been moved in or produced for commerce, and have had an annual gross volume of business done of not less than $500,000."  Complaint ¶ 39.  Arguably, the statement regarding the enterprise's business volume is "no more than [a] conclusion" and thus "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  However, *Iqbal* encourages courts to draw on "judicial experience and common sense" when applying Rule 12(b)(6).  *Id.*  After reading the list of entities the enterprise has contracted with,[3] common sense leads the court to presume the enterprise's business exceeded $500,000 per year.

Similarly, it is plausible the enterprise satisfies the commerce requirement.  Enterprises satisfy the commerce requirement if they possess "employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  29 U.S.C. § 203(s)(1)(A)(i).  The Fifth

---

[3]        The complaint lists New Mexico State University, The Byron Nelson Golf Tournament, the State Fair of Texas, AT&T Stadium and Gexa Energy Pavilion as entities with whom the defendants contracted.  Complaint ¶ 24.

Circuit has concluded that "goods or materials that have been moved in or produced for commerce" includes not only goods or materials "purchased directly by the employer from the place or places located outside the State of Texas, but . . . also goods which were purchased *indirectly* from places outside the State of Texas." *Schultz*, 431 F.2d at 532 (emphasis added).  Thus, if goods or materials traveled in interstate commerce at any point prior to the defendants' acquisition, then these goods or materials maintain this interstate characterization when received by the defendants.  Based on the presumption regarding the economic size of the enterprise, it is plausible the defendants "regularly and recurrently [have] at least two or more employees engaged in such activities," thus satisfying the enterprise commerce requirement.  29 C.F.R. § 779.238; *see also* Complaint ¶ 41 ("Specifically, the rental and event equipment and cleaning supplies that was handled by Named Plaintiffs and Collective Action Plaintiffs when they set up and took down events for the Defendants had been moved across state lines before they were handled by the employees.").[4]

---

[4]       In certain circumstances, plaintiffs have difficulty meeting the heightened *Twombly-Iqbal* pleading standards until they have access to discovery.  See, *e.g.*, *DeJesus v. HF Management Services, LLC*, 726 F.3d 85, 86 (2d Cir. 2013) (referencing "the frequent difficulty for plaintiffs in such cases to determine, without first having access to the defendant's records, the particulars of their hours and pay in any given time period"), *cert. denied*, __ U.S. __, 134 S. Ct. 918 (2014).  In this case, any information in the plaintiffs' pleadings concerning business specifics of the defendants' enterprise could be characterized as conclusory.  However, "judicial experience and common sense" require the court to carefully search the pleadings for

(continued...)

## 2. *Rosa Hernandez's Claims*

The court will treat Rosa Hernandez as a named plaintiff.  On September 3, 2014, Hernandez consented to join the collective action.  First Notice of Filing Consents to Join Collective Action (docket entry 17).  Technically, Hernandez is not joining the collective action; rather, she is becoming a named plaintiff in the action. Until the court approves a collective action, thus triggering the two-stage certification process, no party can join the action as a collective action plaintiff.  See *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 439 (W.D. Wis. 2008) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989)) (stating that "both the Supreme Court and the Court of Appeals for the Seventh Circuit … have held that district courts have both the power and the duty to oversee collective actions generally as well as the notice process in particular").

Hernandez presents sufficient factual allegations to state a claim for failure to pay travel time, minimum wage, and overtime under the FLSA.  The complaint notes that "[s]he was not paid overtime for the time over forty (40) hours that was logged on her timesheets, and she was not paid at all for the time being transported to and from the State Fair."  Complaint ¶ 44.  These allegations are more than "[t]hreadbare

---

[4](...continued)
factual allegations making the plaintiffs' claims plausible.  *Iqbal*, 556 U.S. at 679. This searching inquiry reflects that "motion[s] to dismiss under Rule 12(b)(6) [are] viewed with disfavor and rarely granted."  *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (citation and internal quotation marks omitted).

recitals of the elements of a cause of action. . . ." *Iqbal*, 556 U.S. at 678. Instead,

they specifically reference Hernandez's timesheets as evidencing her overtime hours

and cite her work at the fair as an instance where the defendants failed to compensate

her for travel time. In regards to the minimum wage claim, the complaint's later

contention that the defendants paid "its employees below the minimum wage for *all*

hours worked each workweek" implies Hernandez received wages below the minimum

wage for the hours reflected on her timesheets. Complaint ¶ 54 (emphasis added).

While the claims are not artfully pleaded, this does not justify dismissing the

claims. *Contra* Defendants' Reply at 3, 4 (arguing that Hernandez's use of phrases

such as "expected to work," "expected to be available," and "logged on her

timesheets" raise doubts as to whether she actually completed the work hours and if

the work was completed in a single week). Rule 8 requires nothing more than "a

short and plain statement of the claim showing that the pleader is entitled to relief.

. . ." FED. R. CIV. P. 8(a)(2).

### 3.  *The Other Named Plaintiffs' Claims*

In contrast to Hernandez, the other named plaintiffs do not present sufficient

factual allegations to withstand the defendants' motions to dismiss. The court must

analyze each named plaintiff's claims individually when considering the motions to

dismiss. See, *e.g.*, *Daigle v. Ford Motor Company*, 713 F. Supp. 2d 822, 827 (D. Minn.

2010) (dismissing the warranty claims of some named plaintiffs but not others);

*Bishop v. Jelleff Associates, Inc.*, Civil No. 2452-71, 1972 U.S. Dist. LEXIS 12498, at *1 (D.D.C. Aug. 1, 1972) (in a class action under the Age Discrimination in Employment Act, the court granted the defendants' motion to dismiss with respect to all named plaintiffs except one).  While Hernandez's claims assist in contextualizing the entire complaint, in this case, her claims alone do not "nudge" the remaining named plaintiffs' claims "across the line from conceivable to plausible."  See *Iqbal*, 556 U.S. at 680.

As discussed above, the complaint's factual allegations support the conclusion that the FLSA applies to the defendants.  Absent the factual specifics regarding Hernandez, however, the complaint fails to establish that the defendants violated the FLSA.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted).  Here, the complaint is devoid of factual allegations, save for Hernandez's.

The remaining named plaintiffs recite the basic elements of various FLSA claims without providing any factual support.  For example, the complaint states the following:  "Named Plaintiffs . . . were required to engage in significant amounts of travel during regular business hours that was part of their principle [sic] activity for

- 20 -

work . . ., [and] Defendants failed to pay Named Plaintiffs . . . compensation for such travel time."; "Defendants willfully failed to compensate Named Plaintiffs . . . the federal minimum wage."; and "Defendants required Named Plaintiffs . . . to work at events for over forty (40) hours a week [and failed] to pay them minimum wage or overtime for work done over forty (40) hours a week."  Complaint ¶¶ 46, 48, 57, 60, 62.  These are "formulaic recitation[s] of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and thus are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

### 4. *The Putative Class's Claims*

The complaint also fails to state a claim for relief for the putative class.  As applied to a collective action under the FLSA, a 12(b)(6) motion should *not* succeed if the complaint gives "the defendant fair notice of the putative class." *Dyer*, 2013 WL 609307, at *3.  In this case, the plaintiffs fail "to provide any such description or details about the other proposed parties who are alleged to be 'similarly situated.'" *Creech*, 2012 U.S. Dist. LEXIS 144838, at *7.  The complaint states, "Named Plaintiffs seek to represent a nationwide class of all persons who worked or work for Defendants and who were/are subject to Defendants' unlawful pay practices and policies at any point from three years prior to the filing of the instant matter to the present. . . ."  Complaint ¶ 13.  This allegation provides the defendants with notice

that any employee from the past three years, regardless of job description, is a potential collective action plaintiff.

Based on the pleadings, the court concludes this broadly defined class fails to provide the defendants with *fair* notice.  The complaint notes that the plaintiffs "provided services such as assisting in setting up and taking down of the rentals for the events, final construction clean, power washing, fencing, barricade, crowd control, field and logo painting, sweeping, mopping, picking up trash and cleaning restroom facilities."  Complaint ¶ 28.  The plaintiffs should have used these job duties to assist in defining a more specific putative class.[5]  It is not the defendants' responsibility to define the putative class by piecing together factual allegations strewn throughout a complaint; rather, fair notice requires the plaintiffs to clearly define the putative collective class.  Moreover, in this case, if the defendants crafted a narrower class by referencing factual allegations in the complaint, this class would directly conflict with the broad putative class specifically defined in the text of the complaint.  Thus, the court concludes such inexact and broad notice is insufficient to withstand a Rule 12(b)(6) motion.[6]

_____

[5]      Characterizing the relevant employees as "Event Workers" may provide insight on how the complaint should define the collective action.  Complaint ¶¶ 36-37.

[6]      The court emphasizes that there is nothing inherently improper about a broadly defined collective action.  However, the breadth of a collective action should reflect the facts alleged in the complaint.  In this case, the complaint fails to support a
(continued...)

### 5. *Leave to Amend*

Federal Rule of Civil Procedure 15 allows a party to amend their pleading

"once as a matter of course within . . . 21 days after service of a motion under Rule

12(b). . . ." FED. R. CIV. P. 15(a)(1).  After both defendants filed initial motions to

dismiss, the plaintiffs filed an amended complaint.  *See* Complaint.  To amend their

complaint a second time, the plaintiffs must secure either "the opposing party's

written consent or the court's leave." FED. R. CIV. P. 15(a)(2).  The plaintiffs failed

to motion for leave to amend in their response briefs.  *See* Briefs in Support of

Response.  The court, however, chooses to consider the matter *sua sponte*. See, *e.g.*,

*Brothers v. Print, Inc.*, No. 3:07-CV-0415-B, 2007 WL 3331974, at *7 (N.D. Tex.

Nov. 8, 2007) (Boyle, J.) (granting leave to amend *sua sponte*).

Rule 15 instructs the court to "freely give leave when justice so requires." FED.

R. CIV. P. 15(a)(2).  When interpreting the exact meaning of this phrase, the

Supreme Court stated:

> In the absence of any apparent or declared reason -- such as
> undue delay, bad faith or dilatory motive on the part of the
> movant, repeated failures to cure deficiencies by
> amendments previously allowed, undue prejudice to the

---

[6](...continued)
collective action of all individuals employed by the defendant in the past three years.
The court will not allow the named plaintiffs to plead an overly broad collective
action in the hopes of securing as many collective action plaintiffs as possible at the
certification stage.  Allowing such pleadings would conflict with the requirement that
the pleadings provide "fair notice of the putative class." *Dyer*, 2013 WL 609307, at
*3.

> opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. -- the leave sought should, as
> the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); see also *Whitmire v. Victus Limited*, 212

F.3d 885, 890 (5th Cir. 2000) (applying the *Foman* factors to reach a conclusion that

plaintiff should be able to amend her complaint to allege diversity jurisdiction);

*Averbach v. Rival Manufacturing Company*, 879 F.2d 1196, 1203 (3d Cir. 1989)

(relying on *Foman* factors to conclude that district court's denial of leave to amend

was "within the permissible range of its discretion"), *cert. denied*, 493 U.S. 1023

(1990).  Although no plaintiff sought leave in this case, the court believes the *Foman*

factors still guide its inquiry.

The court concludes that the named plaintiffs should be granted leave to

amend their individual claims as well as the putative collective action claims.  Instead

of repeated amendments, a single amendment failed to address deficiencies in the

complaint.  Moreover, this case has been pending before the court for slightly over

three months, not a duration of time that raises concerns of undue delay or

prejudicial effect on the defendants.

Although the court grants leave to amend, its decisions on the motions to

dismiss serve as a warning to the plaintiffs' attorneys to plead plausible FLSA claims.

In the past, this court has emphasized that sanctions can apply to attorneys who

submit form pleadings.  See, *e.g.*, *Teaney v. Kenneth & Company Honey Do Services, LLC*,

No. 3:13-CV-4211-L, 2014 WL 3435416, at *5 (N.D. Tex. July 15, 2014) (Lindsay, J.).  Prior to the addition of factual allegations concerning Hernandez, the plaintiffs' complaint was similar to a form pleading.  *See* Collective Action Complaint.  The court hopes this resulted from a mistake rather than willful intent.  Regardless, the court requires the plaintiffs' attorneys to invest sufficient time so pleadings contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. . . ."  *Twombly*, 550 U.S. at 555.

### III.  CONCLUSION

For the reasons stated above, the defendants' motions to dismiss with respect to the putative collective action and the named plaintiffs, except for Rosa Hernandez, are **GRANTED**.  The motions to dismiss with respect to Hernandez are **DENIED**.  On its own motion, the court **GRANTS** leave to amend the entire complaint.  The plaintiffs must file a second amended collective action complaint no later than **November 10, 2014**.  If a second amended complaint is not filed by this date, only Hernandez's claims will remain pending before the court.

**SO ORDERED**.

October 21, 2014.

A. Joe Fish

**A. JOE FISH**
**Senior United States District Judge**