UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LUCIA FLORES, ET AL.,               )
                                    )
            Plaintiffs,             )
                                    )        CIVIL ACTION NO.
VS.                                 )
                                    )        3:14-CV-2412-G
ACT EVENT SERVICES, INC., ET AL.,   )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND ORDER

Before the court are the defendants' motions to dismiss for lack of jurisdiction

and, in the alternative, motions for partial summary judgment (docket entries 34, 38)

and the plaintiffs' motions under Federal Rule of Civil Procedure 56(d)[1] (docket

---

[1]     The plaintiffs incorrectly filed Rule 56(f) motions. Plaintiffs' Brief in
Support of Plaintiffs' 56(f) Motion and in the Alternative, Response to Defendant
ACT's Motion ("Plaintiffs' Response to ACT") at 1 (docket entry 43); Plaintiffs' Brief
in Support of Plaintiffs' 56(f) Motion and in the Alternative Response to Final
Touch's Motion ("Plaintiffs' Response to Final Touch") at 1 (docket entry 48). The
plaintiffs' briefing, however, indicates they intended to make a Rule 56(d) motion.
Plaintiffs' Response to ACT at 2 (requesting for "additional time to take the
depositions of the key witnesses in this dispute and to conduct written discovery");
FED. R. CIV. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for
                                                          (continued...)

entries 42, 47).  For the reasons discussed below, the defendants' motions are denied

and the plaintiffs' motions are granted.

## I.  BACKGROUND

### A.  Factual Background

This case concerns an employment compensation dispute under the Fair Labor

Standards Act ("FLSA").  The plaintiffs were employees for ACT Event Services, Inc.

("ACT"), Roman Luis Gaona[2] ("Gaona"), and Final & Touch Cleaning Services

("Final Touch") (collectively, "the defendants").  They allege the defendants violated

the FLSA by failing to pay compensable travel time, abide by federal minimum wage

---

[1](...continued)
specified reasons, it cannot present facts essential to justify its opposition, the court
may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits
or declarations or to take discovery; or (3) issue any other appropriate order.").
Although the plaintiffs cited the wrong rule when filing their motion, the defendants
understood the substance of the motion.  *See* ACT's Reply in Support of its Motion
to Dismiss and, in the Alternative and if Necessary, Motion for Partial Summary
Judgment ("ACT's Reply) at 1 ("Plaintiffs claim they need to conduct discovery to be
able to refute ACT's offers of judgment.") (docket entry 50).  Thus, the court will
treat the motion as an appropriately filed Rule 56(d) motion.

[2]      On December 6, 2014, the court received notice of Gaona's death.
Statement Noting a Party's Death (docket entry 45).  The plaintiffs indicated their
intent to "pursue the action against the Representative of his Estate."  Plaintiffs'
Response to Final Touch at 2 n.1.  Therefore, pursuant to Federal Rule of Civil
Procedure 25(a)(1), the court directs the plaintiffs to substitute the representative of
Gaona's estate for the deceased Gaona as a defendant in this action.  According to
Rule 25(a), that substitution must occur within 90 days of December 6, 2014 (*i.e.*, by
March 6, 2015), or "the action . . . against the decedent must be dismissed."

laws, and provide overtime compensation.  Second Amended Collective Action Complaint ("Complaint") ¶¶ 1, 56-74 (docket entry 30).

The defendants argue that this court no longer has jurisdiction over the dispute because (1) they made offers of judgment to eight plaintiffs and (2) four of the plaintiffs accepted settlements following a Department of Labor (DOL) investigation into ACT's business.[3]  *See* Appendix in Support of ACT Event Service, Inc.'s Motions ("ACT's Appendix"), exhibits A-11 – B-8, at 31-55 (docket entry 36); ACT Event Services, Inc.'s Brief in Support of its Motions ("ACT's Brief") at 4-6 (docket entry 35).  However, the plaintiffs claim the timesheets used to calculate both the offers of judgment and DOL settlements "do not accurately reflect the actual time work[ed]" because they fail to account for travel and wait time.  Plaintiffs' Response to ACT at 5-6.[4]  If this is true, then according to the plaintiffs, the court retains jurisdiction over all of the claims. See *id.* at 5-6.  The plaintiffs also allege that ACT may have "acted

---

[3]      In total, there are eleven individual plaintiffs.  One of the plaintiffs, Gloria Torres, received both an offer of judgment and a settlement check following the DOL investigation.  *See* Complaint; Notice of Correction to Second Amended Collective Action Complaint (docket entry 46).

[4]      The defendants make identical motions and use the same arguments to support their motions.  *See* ACT's Brief; Roman Luis Gaona and Final Touch Cleaning Services' Brief in Support of Their Motions (docket entry 39).  The plaintiffs' response briefs are similarly duplicative.  *See* Plaintiffs' Response to ACT; Plaintiffs' Response to Final Touch.  Therefore, throughout this opinion, the court will only cite to one of the relevant briefs unless citation to both is necessary.

fraudulently regarding the DOL investigation and settlement," which they contend

counsels against enforcing a Section 216(c) waiver.  *Id.* at 6-7, 9-10.

## B. Procedural Background

After this court issued an opinion granting in part and denying in part the

defendants' initial motions to dismiss[5] (docket entry 23), the defendants filed

additional motions to dismiss for lack of jurisdiction, and in the alternative, for

partial summary judgment (docket entries 24, 27).  The plaintiffs then filed an

amended complaint, *see* Complaint, leading the court to issue orders withdrawing the

defendants' motions (docket entries 33, 37).  The defendants refiled these motions

(docket entries 34, 38), to which the plaintiffs filed responses and Federal Rule of

Civil Procedure 56(d) motions (docket entries 42, 47).  Then ACT, but neither

Gaona nor Final Touch, filed a reply to the plaintiffs' response (docket entry 50).

The plaintiffs filed an unopposed motion for leave to file a surreply (docket entry 52),

which included as attachments a draft of their surreply and an appendix.  In an order

granting the motion, the court instructed the plaintiffs to "electronically file their

surreplies no later than **January 8, 2015**" (docket entry 53) (emphasis in original).

---

[5]     In this opinion, the court concluded that the plaintiffs' pleadings were
sufficient with regard to FLSA coverage.  Memorandum Opinion and Order at 15-17.
However, only one individual plaintiff, Rosa Hernandez, made allegations creating a
plausible inference that the defendants violated her FLSA rights.  *Id.* at 18-22.  The
court dismissed the claims of the other individually named plaintiffs and the putative
class, but the court granted the plaintiffs leave to amend their complaint.  *Id.* at 19-
25.

The plaintiffs did not follow the court's order and thus the court has not considered the surreply.

## II.  ANALYSIS

### A.  Legal Analysis

#### 1.  *Valid Waivers Under Section 216(c)*

The Fair Labor Standards Act, 29 U.S.C. §§ 201-219, provides employees with various rights, most notably the right to minimum wage and overtime pay, against FLSA-covered employers.  Individuals can enforce these rights by bringing a private cause of action in a court of competent jurisdiction.  29 U.S.C. § 216(b). Alternatively, the Department of Labor is "authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation . . .." *Id.* § 216(c). "[T]he agreement of any employee to accept such [DOL-supervised] payment shall upon payment in full constitute a waiver by such employee of any right" to bring a private cause of action in court.  *Id.*  The statute indicates that a valid waiver requires "(a) that the employee agree to accept the payment which the [DOL] determines to be due and (b) that there be 'payment in full.'" *Solis v. Hotels.com Texas, Inc.*, No. Civ. A. 3:03-CV-0618-L, 2004 WL 1923754, at *2 (N.D. Tex. Aug. 26, 2004) (Lindsay, J.) (alteration in original) (quoting *Sneed v. Sneed's Shipbuilding, Inc.*, 545 F.2d 537, 539 (5th Cir. 1977)).

With respect to the first requirement, "[a]n agreement is more than the acceptance of funds, as it must exist independent of payment." *Favata v. National Oilwell Varco, L.P.*, C.A. No. C-12-082, 2013 WL 1222378, at *3 (S.D. Tex. Feb. 7, 2013) (quoting *Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141, 1146 (9th Cir. 2007)) (internal quotations omitted).  "Typically an employee manifests assent by signing a receipt (either a standard WH-58 or another form authorized by the DOL), which puts the employee on notice of the resulting waiver." *Id.* (quoting *Dent*, 502 F.3d at 1147) (internal quotations omitted).  Absent an employee's signature on a receipt, "cashing of checks . . . [usually does] not release [the employee's] full claims." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986) (Easterbrook, J.).

However, a few courts have concluded that even absent a signature, if "a release was provided with the check," then an employee executes an enforceable waiver by "cashing [the] check issued under a DOL-supervised settlement." *Favata*, 2013 WL 1222378, at *3 (citations omitted).  For example, in *Heavenridge v. Ace-Tex Corporation*, No. 92-75610, 1993 WL 603201, at *1 (E.D. Mich. Sept. 3, 1993), the employee received, along with a check, a WH-58 waiver form stating that "acceptance of back wages due under the Fair Labor Standards Act [would] give[ ] up any right" under Section 216(b) to initiate a private suit.  The court concluded the employee executed a valid waiver by cashing the check.  *Id.* at *1-3.  Representing the most

- 6 -

liberal approach to enforcing waivers, *Heavenridge* demonstrates that to enforce a waiver courts require, at a minimum, that employees receive notice that by cashing the check they waive their right to bring private claims. *Id.* at *2-3.

When an employer believes an employee executed a valid waiver, it should raise the waiver defense through a Rule 12(b)(6) motion rather than a Rule 12(b)(1) motion.[6] *Centeno v. Facilities Consulting Group, Inc.*, Civil Action No. 3:14-CV-3696-G, 2015 WL 247735, at *7 (N.D. Tex. Jan. 20, 2015) (Fish, J.). The Supreme Court has recognized that "'[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief -- a merits-related determination.'" *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 511 (2006) (quoting 2 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[1] (3d ed. 2005)). Thus, the Court announced a rule to simplify this inquiry: "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516. Because Section 216(c)

---

[6] The court notes, however, that a Rule 12(b)(6) motion is not appropriate in all cases. To present a waiver defense, defendants generally must attach relevant documents to their motion to dismiss. If the complaint does not reference these specific documents, or at least the relevant DOJ settlement, then the court cannot consider these documents when ruling on a Rule 12(b)(6) motion. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (stating that for a court to consider documents attached to a motion to dismiss, the documents must be mentioned in the complaint and central to the plaintiff's claims), *cert. denied*, 552 U.S. 1182 (2008). In such a case, the defendant should file a Rule 56 summary judgment motion to assert the waiver defense.

contains no language linking the waiver to a court's jurisdiction under the FLSA, this court will treat the waiver as nonjurisdictional.  See *Min Fu v. Hunan of Morris Food Inc.*, Civ. No. 12-05871 (KM), 2013 WL 5970167, at *4 (D.N.J. Nov. 6, 2013) ("[T]he waiver provision of 29 U.S.C. § 216(c) . . ., which is the statutory basis of the DOL Release, contains no such limitation on jurisdiction.").  As such, a Rule 12(b)(6) motion is the appropriate tool for raising the waiver defense.

### 2.  *The Cases or Controversies Requirement*

### a.  Dismissing Cases for a Lack of Subject-Matter Jurisdiction

Federal courts may only adjudicate "cases" or "controversies."  U.S. CONST. art. III, § 2.  "Such a case or controversy must exist throughout the litigation; in other words, the case cannot be moot.  Thus, if a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents."  *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008) (citations and internal quotations omitted), overruled in part by *Genesis Healthcare Corporation v. Symczyk*, __ U.S. __, 133 S. Ct. 1523, 1529 (2013) (rejecting *Sandoz's* application of the relation-back doctrine to prevent employers from "picking-off" named plaintiffs to defeat FLSA collective action certification).  Because the case or controversy requirement is at the heart of a federal court's jurisdiction to hear a dispute, a court can raise the issue *sua sponte* at any stage of litigation.  *Trugreen Landcare, LLC v. Scott*, 512 F. Supp. 2d 613, 618 (N.D. Tex. 2007) (Fitzwater, J.) ("[T]he court must notice its own lack

of subject matter jurisdiction *sua sponte*, if necessary."). If, however, the court fails to

consider the issue, a defendant can file a Rule 12(b)(1) motion. See, *e.g.*, *Rollins v.*

*Systems Integration, Inc.*, No. 4:05-CV-0408-Y, 2006 WL 3486781, at *1, *5 (N.D.

Tex. Dec. 4, 2006) (Means, J.) (granting a defendant's Rule 12(b)(1) motion to

dismiss the plaintiff's claims).

In instances where a defendant initiates the court's jurisdictional review, courts

must distinguish between "facial" and "factual" attacks. *Paterson v. Weinberger*, 644

F.2d 521, 523 (5th Cir. 1981). "[I]f the defense merely files a Rule 12(b)(1) motion,

the trial court is required merely to look to the sufficiency of the allegations in the

complaint because they are presumed to be true." *Id.* Therefore, a court's analysis of

a "facial attack" resembles the review of a Rule 12(b)(6) motion. See *TF-Harbor, LLC*

*v. City of Rockwall, Texas*, 18 F. Supp. 3d 810, 817 (N.D. Tex. 2014) (Fitzwater, C.J.),

*aff'd*, __ Fed. Appx. __, 2015 WL 511372 (5th Cir. Feb. 9, 2015)..

In contrast, "[i]f a defendant makes a 'factual attack' upon the court's subject

matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or

other evidentiary materials." *Paterson*, 644 F.2d at 523. In this situation, "[a] court

can find that subject matter jurisdiction is lacking based on (1) the complaint alone;

(2) the complaint supplemented by undisputed facts evidenced in the record; or

(3) the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts." *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)

(citation and internal quotations omitted).  When facing a "factual attack," a plaintiff generally should "submit facts through some evidentiary method." *Paterson*, 644 F.2d at 523.  Bearing the burden of proof, the plaintiff must prove by a preponderance of the evidence that the court possesses jurisdiction to hear the dispute. *Ballew*, 668 F.3d at 781 (citation omitted).

### b.   Differentiating Challenges to Subject-Matter Jurisdiction From Attacks on the Merits

Defendants cannot substitute "factual attacks" under Rule 12(b)(1) for Rule 56 motions.[7]  "[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits, [the Fifth Circuit has] held that the trial court must assume jurisdiction and proceed to the merits." *Montez v. Department of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004).  "'This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under . . . Rule 56 . . . which place[s] greater restrictions on the district court's discretion.'" *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).  Thus, in federal question cases, a defendant's attack under Rule 12(b)(1) will often be "a challenge to the existence of a

---

[7]      Because a "factual attack" requires submission of documents outside the pleadings, its analogue among motions attacking the merits is a Rule 56 motion rather than a Rule 12(b)(6) motion.

federal cause of action," which is appropriately treated as an attack on the merits rather than the court's subject matter jurisdiction. *Williamson*, 645 F.2d at 415.

### 3. *Mooting Claims Through Offers of Judgment*

#### a. Examples of Rule 12(b)(1) Motions Following Offers of Judgment

Federal Rule of Civil Procedure 68 provides defendants with one method for eliminating a live case or controversy: "[A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." FED. R. CIV. P. 68(a). In the Fifth Circuit, if an employer makes an offer of judgment fully satisfying an employee's FLSA claims, then those claims are rendered moot regardless of whether the employee accepts the offer. See *Sandoz*, 553 F.3d at 914, 919. After issuing an offer of judgment, an employer can present a "factual attack" on jurisdiction by filing a Rule 12(b)(1) motion supported by the offer of judgment and other relevant documents. See *Rollins*, 2006 WL 3486781, at *1-2. Before a court can declare the claims moot and consequently dismiss them, however, it must determine if the offer of judgment fully satisfies the employee's claims.

In *Rollins*, this court granted the employer's Rule 12(b)(1) motion after the employer made an offer of judgment covering unpaid overtime wages, liquidated damages under Section 216(b), and costs and reasonable attorney's fees. *Id.* at *2, *5. The employer submitted time cards to support its calculation of unpaid overtime

wages, thus creating a "factual attack" on the court's jurisdiction. *Id.* at *2. In response, the employee submitted no evidence disputing the employer's calculations; instead, he merely argued that "he should not be obligated to tender substantial proof of his allegations at this stage of the litigation." *Id.* at *3 (internal quotations and brackets omitted). With the employer's evidence unrebutted, the court concluded that the "offer of judgment [made the employee] whole" and therefore eliminated any live case or controversy. *Id.* at *5; see also *Ward v. Bank of New York*, 455 F. Supp. 2d 262, 268-70 (S.D.N.Y. 2006) (concluding that the employer's offer of judgment mooted any FLSA claims because the employee failed to submit any evidence challenging the employer's time sheets).

When facing a "factual attack," the majority of employees have not followed this ill-advised approach. In *Reed v. TJX Companies, Inc.*, No. 04 C 1247, 2004 WL 2415055, at *1 (N.D. Ill. Oct. 27, 2004), the court denied the employer's Rule 12(b)(1) motion after the employee contested the sufficiency of the offer of judgment. The employee highlighted that the employer did "not clarify how [it] identified that a particular time report had been edited nor how [it] determined that other time reports had not been edited," issues pertinent to the calculation of outstanding wages. *Id.* Furthermore, in only analyzing edits to the time sheets, the employer failed to address the employee's claim that "he was asked to clock in and out for a lunch break while he continued, in actuality, to work." *Id.*

In *Reyes v. Carnival Corporation*, No. 04-21861-CIV, 2005 WL 4891058, at *2-3 (S.D. Fla. May 25, 2005), the employer made an offer of judgment exceeding the employee's own preliminary damages computation; nevertheless, the court rejected the employer's "factual attack." To support its conclusion, the court noted that "the plaintiff in this case disputes that [the employer's] offer is for more than the maximum amount of damages he could recover under the FLSA." *Id.* at *3. While the employer's offer was based on the employee's own estimate, "[t]he parties dispute[d] whether Plaintiff [was] provided all the documents in [the employer's] possession regarding the number of hours Plaintiff actually worked." *Id.* Furthermore, "the Plaintiff's Rule 26 disclosure states that it is merely a preliminary estimate due to incomplete records in the possession of the Plaintiff." *Id.* These factors prevented the court from concluding "that the offer of judgment [was] definitively for more than the Plaintiff could recover at trial. . . ." *Id.*

### b.  Similarities Between the Rule 12(b)(1) Analysis Following an Offer of Judgment and a Summary Judgment Inquiry

While ostensibly working within the framework of Rule 12(b)(1), the *Reed* and *Reyes* courts' analyses mirror a summary judgment inquiry. The employee in *Reed* defeated the motion partially by "showing that the materials cited do not establish the absence or presence of a genuine dispute. . . ." FED. R. CIV. P. 56(c)(1)(B). Among other things, he demonstrated that the employer's declaration left unaddressed the allegation that he was required to work during lunch time. 2004

- 13 -

WL 2415055, at *1.  Thus, the *Reed* court concluded that "it is *not unreasonable to infer* that [the employee] will be able to show he is entitled to" recover more than the offer. 2004 WL 2415055 at *2 (emphasis added).

Both courts mentioned the importance of additional discovery.  *Reyes*, 2005 WL 4891058, at *2 ("Plaintiff argues that the offer of judgment does not offer complete relief because it is based on the estimates in Plaintiff's initial Rule 26(a) disclosures, which are made only based upon the information then reasonably available, prior to the completion of discovery and without access to [the employer's] complete wage and hour records concerning the Plaintiff that would allow for a more accurate estimation of his damages."); *Reed*, 2004 WL 2415055, at *1 (The employee "has and does dispute that [the employer's] $500 offer would compensate him fully for his claims.  It is not for this court to engage in extensive fact determination at this preliminary stage of litigation[, as it would require] a far-reaching and supposition-laced inquiry.").  When this situation arises in the context of a summary judgment motion, the court possesses authority to provide additional time for discovery by either denying the motion or deferring its consideration.  *See* FED. R. CIV. P. 56(d), (e).  Noting that until further discovery took place there was no basis "to conclude that the offer of judgment is *definitively for more* than the Plaintiff could recover at trial," the *Reyes* court followed this approach by denying the defendant's motion. 2005 WL 4891058 at *3 (emphasis added).

- 14 -

The italicized text in the two preceding paragraphs reveals the hallmark of this comparison: the *Reed* and *Reyes* courts applied a burden of proof arguably identical to that used under Rule 56. Although composed of different language, the standards used by the two courts are quite similar. If a court cannot "definitely" conclude the moving party's argument is correct, then the nonmoving party's contention is most likely "not unreasonable," and vice versa. *Reyes*, 2005 WL 4891058 at *3; *Reed*, 2004 WL 2415055 at *2. Moreover, the moving party's argument is "not unreasonable" if and only if "a reasonable jury could return a verdict for the nonmoving party" -- the latter of these burdens being a common formulation of the summary judgment standard. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This analysis demonstrates that, in all but name, the *Reed* and *Reyes* courts conducted a summary judgment inquiry.

c. The *Reed* and *Reyes* Courts Indirectly Apply the *Montez* Rule

In many cases, a defendant's Rule 68 offer of judgment is nothing more than a "factual attack" on the plaintiff's claims. If the parties still dispute the merits, then in making a Rule 12(b)(1) motion following an offer of judgment, a defendant presents an "indirect attack[ ] on the merits as [a] Rule 12(b)(1) motion[ ]." *Montez*, 392 F.3d at 150 (quoting *Williamson*, 645 F.2d at 415). The *Reyes* and *Reed* courts recognize the true character of the defendants' attacks. Consequently, they provide the plaintiffs with a "greater level of protection [required when] . . . facing a challenge to

the validity of [their] claim[s]" by analyzing a Rule 12(b)(1) motion as if it were a Rule 56 motion.[8]  *Id.* (quoting *Williamson*, 645 F.2d at 415).  Under the same circumstances in the Fifth Circuit, courts must deny the motion and have parties refile a Rule 56 motion.[9]  *Id*.  While these two approaches apply different procedures, they produce the same functional result.  Absent application of one of these approaches, the general Rule 12(b)(1) standard would require the plaintiff to prove factual disputes, which concern the merits of the claims, by a preponderance of the evidence -- a burden of proof in direct conflict with the Rule 56 standard. *Ballew*, 668 F.3d at 781 (citation omitted).

---

[8]      Courts rely on Rule 56 for clear and effective procedures for analyzing the parties' evidentiary submissions.  The Federal Rules of Civil Procedure explicitly require courts to convert motions to dismiss under Rule 12 into summary judgment motions in two instances:

> If, on a motion under Rule 12(b)(6) or 12(c),
> matters outside the pleadings are presented to
> and not excluded by the court, the motion
> must be treated as one for summary judgment
> under Rule 56.  All parties must be given a
> reasonable opportunity to present all the
> material that is pertinent to the motion.

FED. R. CIV. P. 12(d).  A "factual attack" creates a circumstance paralleling those specifically addressed in Rule 12(d).  Therefore, courts draw from Rule 56 in this circumstance as well.

[9]      *Rollins* may appear to be an exception to this rule.  However, in *Rollins*, the plaintiff did not dispute the defendant's calculations.  Therefore, the offer of judgment conclusively provided full relief, depriving the court of jurisdiction. *Rollins*, 2006 WL 3486781, at *2-3, *5.

### 4. *Compensation for Wait and Travel Time Under the FLSA*

Whether employees use idle time for their benefit or the employer's benefit determines if such time is compensable under the FLSA. *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411 (5th Cir. 1990). "If the idle time is spent predominantly for the benefit of the employer, the employee is said to be 'engaged to be waiting' and is entitled to compensation." *Id.* (internal quotations and citation omitted). For example, "[w]aiting benefits the employer when it is requested or required by the employer." *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994). "On the other hand, if the time primarily benefits the employee, the employee is 'waiting to be engaged' and is entitled to compensation only for that time spent in productive work." *Mireles*, 899 F.2d at 1411 (internal quotations and citation committed).

With respect to travel time, "employees are entitled to compensation for travel time that is a principal activity of the employee." *Vega*, 36 F.3d at 424. "Principal activities" are those "performed as part of the regular work of the employees in the ordinary course of business. . . . [the] work is necessary to the business and is performed by the employees, primarily for the benefit of the employer." *Id.* (quoting *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)). The Portal-to-Portal Act declared that home-to-work travel is generally not a "principal activity" and thus not compensable. *See* 29 U.S.C. § 254.

While most applications of the home-to-work travel rule are straight forward, employer-operated transportation systems require courts to undertake detailed fact-specific inquiries.  In *Vega*, the defendant used a bus to transport farm workers up to two-and-a-half hours to harvest crops.  36 F.3d at 423.  The Fifth Circuit concluded that the farm workers' travel time was not compensable because, among other things, they did not load tools onto the bus, they did not perform any work on the bus, and the transport system was not mandatory (*i.e.*, employees could commute directly to the work location).  36 F.3d at 425.

Regarding the last of these factors, the Fifth Circuit has rejected the argument that the mandatory character of a "transportation scheme *per se* renders such travel time compensable under the FLSA."  *Griffin v. S&B Engineers & Constructors, Limited*, 507 Fed. App'x 377, 382 (5th Cir.), *cert. denied*, __ U.S. __, 134 S.Ct. 111 (2013). In *Griffin*, the employees experienced a six-to-seven mile mandatory commute on employer-owned buses from a parking lot to the nearby plant.  *Id.* at 378.  Employees could engage in personal activities and performed no work related-activities while on the buses.  *Id.* at 383.  Based on these facts, the Fifth Circuit concluded that such travel time was not compensable.  *Id*.  Together these cases indicate that no single factor is "dispositive in concluding [that] travel time [is] noncompensable;" rather, courts in the Fifth Circuit always "discuss[ ] several factors" before reaching a conclusion.  *Id*.

- 18 -

B. <u>Application of Law to Fact</u>

1. *The Court Will Analyze the Waiver Defense Under Rule 12(b)(6)*

The defendants asserted their Section 216(c) waiver defense through a Rule 12(b)(1) motion. ACT's Brief at 1. As discussed above, a Rule 12(b)(6) motion is the proper tool for raising the waiver defense. See *Min Fu,* 2013 WL 5970167, at *4. Despite this procedural miscue, the court will assess the waiver defense as if the defendants had properly raised it through a Rule 12(b)(6) motion. *Lopez-Santiago v. Coconut Thai Grill*, Civil Action No. 3:13-CV-4268-D, 2014 WL 840052, at *3 n.4 (N.D. Tex. Mar. 4, 2014) (Fitzwater, C.J.) ("Districts courts can in their discretion treat a Rule 12(b)(1) motion as a Rule 12(b)(6) motion and analyze it under the Rule 12(b)(6) standard.") (citing *Peckmann v. Thompson*, 966 F.2d 295, 297 (7th Cir. 1992)).

2. *The Defendants Fail to Establish that the Relevant Plaintiffs Waived Their Claims*

The defendants provided the court with both a Form WH-56 listing the wages the DOL determined owed to the relevant employees (*i.e.*, Lucia Flores, Daniel Moreno, Abel Moreno, and Gloria Torres) and checks cashed by those employees. ACT's Appendix, exhibits A-11 -- A-15, at 31-37. These documents demonstrate the DOL's involvement with the settlement process and the employees' receipt of full payment. See *id.* However, the defendants fail to provide the court with any documents indicating the employees' agreement to waive their claims.

- 19 -

The court has no indication that the employees were on notice that by cashing the checks they waived their claims, let alone that they affirmatively "manifest[ed] assent by signing a receipt (either the standard WH-58 or another form authorized by the DOL) . . .." *Dent*, 502 F.3d at 1147.  The memo line of the cashed checks includes the phrase, "FLSA settlement 1674494, 1/23/2011 -- 1/27/2013."  ACT's Appendix, exhibits A-12 -- A-15, at 34-37.  This phrase fails to explicitly inform employees that by cashing their checks they waive any claims.  Deeming this inconspicuous and ambiguous phrase adequate notice would encourage employers to forgo providing WH-58 forms when settling FLSA claims.  Without any evidence indicating the plaintiffs' agreement, the court must deny both the defendants' Rule 12(b)(6) motions and their motions for partial summary judgment.

### 3.  *The Offers of Judgment Fail to Moot the Relevant Claims*

The parties dispute whether the offers of judgment should include compensation for travel and wait time.  According to the plaintiffs, they were "required to show up and would show up at a designated meeting area at least one (1) hour before being taken to the event by an ACT vehicle" and should be "paid for the time waiting to leave for the event at the designated wait area" and for their travel time.  Appendix in Support of Plaintiffs' Motions, exhibits B-L, at 9-89 (docket entry 44); *see also* Plaintiffs' Response to ACT at 5-6.  In contrast, the defendants contend that the FLSA does not cover the relevant travel and wait time because the provided

transportation was "[f]or the convenience of the workers" and "workers [were] not required to use the method of transportation provided by ACT, but [were] made aware of the option." Appendix in Support of ACT's Reply, exhibit A, at 1 (docket entry 51).

At this stage of the litigation, the characterization of the travel and wait time -- the primary dispute between the parties -- is an issue "of fact . . . central both to subject matter jurisdiction and the claim on the merits." *Montez*, 392 F.3d at 150. To provide a "greater level of protection to the plaintiff[s] who in truth [are] facing a challenge to the validity of [their] claim[s]," the defendants should raise this challenge through a Rule 56 motion. *Id.* (quoting *Williamson*, 645 F.2d at 415).

Additionally, if the defendants made a Rule 56 motion with respect to the claims covered by the offers of judgment, at the present moment, the court would defer consideration of the motion until additional discovery had taken place. *See* FED. R. CIV. P. 56(d). The timesheets alone are unlikely to demonstrate the defendants' alleged failure to compensate travel and wait time. Rather, the plaintiffs must have an opportunity to "take depositions, including the depositions of Corporate Representatives for ACT Event Services or Final Touch Cleaning Services, Inc.[,]" before the court will consider ruling on a summary judgment motion. Plaintiffs' Response to Act at 2. Therefore, despite denying the defendants' summary judgment motions, the court nonetheless grants the plaintiffs' Rule 56(d) motions.

- 21 -

### III.  <u>CONCLUSION</u>

For the reasons discussed above, the defendants' motions to dismiss and motions for partial summary judgment are **DENIED** and the plaintiffs' Rule 56(d) motions are **GRANTED**.  Furthermore, as mentioned in footnote two, the court **DIRECTS** the plaintiffs, if they intend to pursue their claims against the estate of Gaona, to substitute the representative of Gaona's estate for the deceased Gaona by **March 6, 2015**.

**SO ORDERED**.

February 11, 2015.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**